# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING,<br><br>                Plaintiff,<br><br>vs.<br><br>K2 PROPERTY DEVELOPMENT, LLC and DANIEL KLEIN,<br><br>                Defendants. | CASE NO. 16cv678-LAB (AGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT [Dkt. 114]** |

Over the course of this litigation, the parties have entered into two separate settlement agreements, the latter of which was agreed to on the record with Magistrate Judge Andrew G. Schopler. The terms of the second agreement, which superseded the first, required that Defendant Daniel Klein provide to Plaintiff, within one month, various documents establishing a relationship between Defendants and other telemarketing firms. Klein produced these documents, but he did so four days after the one-month deadline. For the reasons set forth below, the Court finds that Klein substantially complied with the terms of the settlement agreement and therefore **GRANTS** Defendants' Motion to Enforce the Settlement Agreement.

## INTRODUCTION

### I.    Background

Plaintiff Anton Ewing brought this Telephone Consumer Protection Act case against Defendants, alleging that they used an automated telephone dialing system to

call Ewing and record the calls without his consent. Dkt. 1-2 at ¶¶17, 21. The parties have twice attempted to settle this suit, both times at least somewhat unsuccessfully. The terms of the original settlement agreement, which was entered out-of-court and failed for reasons set out in the parties' briefing, are not relevant here. On September 28, 2017, the parties again attempted to settle their case, this time on the record in front of Magistrate Judge Andrew G. Schopler. The terms of the agreement were recited on the record, and the transcript of the hearing demonstrates that both parties explicitly agreed to the terms. The agreement provided that Klein would produce to Ewing, within one month, the following: (1) the "contact information" of the "third-party lead broker who was used [in connection with the telemarketing calls that led to this case];" (2) "whatever contracts, e-mails, or recordings exist between that third-party lead broker and Sungevity [Inc.];" and (3) "a declaration or some other statement under oath saying that Defendant has used that third-party lead broker and Sungevity for the improper telemarketing in this case." Dkt. 34. If those terms were met, the parties agreed, they would submit a joint dismissal with prejudice as to all named Defendants. *Id.* at 3:17-4:5. The parties further agreed that this new agreement would supersede the prior settlement agreement. *Id.* at 5:21-23. Finally, Judge Schopler noted that "if Defendant is not able to produce the items . . . within one month, we would simply be back where we are today and this settlement we've just described would not be operative unless . . . that contingency is taken care of." *Id.* at 5:9-14.

Defendant Daniel Klein did provide Ewing with the documents, but he did so on November 2, 2017, four days after the expiration of the one-month deadline. Specifically, on November 2, Klein sent copies of the following documents to Ewing via First-Class U.S. Mail:

1. Conserva Solar Non Disclosure Agreement, signed by Shehzad Khan on behalf of Conserva Solar, with accompanying email dated October 9,2015 (3 pages);
2. All Star BPO Business Proposal email chain dated April 12, 2016 to April 18, 2016 with All Star BPO contact information (3 pages);

3. Lead Purchase Agreement between Planet Excellence BPO & Consultants and K2 Property Development, LLC, dba Conserva Solar, with Exhibits I & II; unsigned (9 pages);
4. Lead Purchase Agreement between Planet Excellence BPO & Consultants and K2 Property Development, LLC, dba Conserva Solar, with Exhibits I & II; signed by Usman Saeed, CEO of Planet Excellence BPO (9 pages);
5. Qualified Opportunity Purchase Agreement between K2 Property Development, LLC, dba Conserva Solar and Sungevity, Inc., with Exhibits I through III; signed by David Dunlap, Chief Development Officer Sungevity, Inc. (11 pages);
6. Verification of Daniel Klein re Production of Documents and Information pursuant to Contingent Settlement Agreement Entered into on September 28, 2017; and
7. Declaration of Daniel Klein Re Production of Documents and Information Pursuant to Contingent Settlement Agreement Entered into on September 28, 2018 authenticating each of the documents being produced and explaining the relationships between the parties dated November 2, 2017.

*See* Dkt. 114-C, D. A courtesy copy of these documents was mailed to the Court on the same day. Klein's declaration explains that "BPO" was the lead broker that generated sales leads for K2, his company. Dkt. 114-2 at 56. K2 in turn sold those leads to Sungevity, Inc. *Id.* As such, he argues that the produced documents satisfied the requirements set out in the agreement. Dkt. 126 at 3. Klein also states that he misunderstood the timing and believed he was to provide the documents prior to the scheduled November 9, 2017 status conference in front of Judge Schopler. Dkt. 114-1. Ewing does not dispute that Klein sent him these documents. Although Ewing suggests Klein had additional documents that he withheld, he does not provide any evidence of this allegation. Dkt 125 at 12-13.

Following Klein's failure to meet the deadline, Ewing filed a "Notice of Non-Compliance by Defendant Daniel Klein" on November 1, 2017. The parties did not enter a joint dismissal, but instead continued to litigate for nearly another year. Now, represented by new counsel,[1] Klein moves to enforce the terms of the September 28,

---

[1] The Court is mindful that Klein's previous counsel withdrew after being sanctioned for failing to appear and admonished for publicly filing confidential information. *See* Dkts. 40-42. Klein's delayed production appears to be at least partly attributable to his rocky relationship with his previous counsel. *See* Dkt. 38.

2017 settlement agreement on grounds that he substantially performed his end of the contract.

## II. Factual Findings

The Court takes judicial notice of the September 28, 2017 transcript and finds that the parties entered into a contingent settlement agreement that, if the terms were met, would supersede the terms of any previous agreements. Dkt. 34. The Court finds that the parties expressly agreed to the essential terms set out in that document, as summarized above. *See Doi v. Halekulani Cop.*, 276 F.3d 1131, 1139 (9th Cir. 2002) (there is no need for an evidentiary hearing on the existence or terms of a settlement agreement when it is entered into on the record in open court). The only question for the Court is whether, as a matter of law, Defendants' four-day delay in meeting the deadline to produce documents constitutes substantial performance such that the Court should enforce the terms of the agreement.

# ANALYSIS

## I. Defendants' Motion to Enforce the Settlement Agreement

Under federal law, the Court has inherent authority to enforce a settlement agreement in an action pending before it.[2] *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir.1994). This inherent authority applies to settlement agreements entered on the record but later reneged on by one party. *See. Henderson v. Yard House Glendale, LLC*, 456 F. App'x 701, 702 (9th Cir. 2011) ("The district court did not abuse its discretion in enforcing the settlement agreement after [Plaintiff] entered into it on the record in open court, but later refused to execute a formal agreement to dismiss the action. . . ."). To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1401

---

[2] This Court would ordinarily defer to Magistrate Judge Schopler regarding interpretation and enforcement of the settlement agreement, given that he presided over the proceedings that led to the agreement. However, Judge Schopler is currently out of district serving on active military duty, so it falls on this Court to resolve this dispute.

(9th Cir.1994). Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144–45 (9th Cir.1977).

In California, a party is deemed to have substantially complied with an obligation where the deviation is "unintentional and so minor or trivial as not 'substantially to defeat the object which the parties intend to accomplish.'" *Wells Benz, Inc. v. United States*, 333 F.2d 89, 92 (9th Cir. 1964) (quoting *Connell v. Higgins*, 170 Cal. 541, 150 P. 769, 775 (1915)). "This standard doesn't require perfection . . . [and] deviations are permitted so long as they don't defeat the object of the [agreement.]" *Rouser v. White*, 825 F.3d 1076, 1082 (9th Cir. 2016).

Given that the agreement is complete and was agreed to by both parties on the record,[3] the only question for the Court to answer here is whether Klein's four-day delay in providing the documents to Ewing constitutes substantial compliance, such that the agreement should be enforced. The Court finds that it does.

As Williston on Contracts recognizes, "[u]nder the doctrine [of substantial performance], minor or technical breaches of a contract are excused, not because the breaching party *could not* have performed completely but because the performance that was rendered was so similar or close to that required under the contract that the failure to perform exactly results in an immaterial breach, the non-breaching party having gotten substantially what it bargained for." § 44:52. The doctrine of substantial performance, 15 Williston on Contracts § 44:52 (4th ed.) (emphasis in original). Further, "[d]elay in performance is a material failure only if time is of the essence, i.e., if prompt performance is, by the express language of the contract or by its very nature, a vital matter." *Edwards v. Symbolic Int'l, Inc.*, 414 F. App'x 930, 931 (9th Cir. 2011) (quoting *Johnson v.*

---

[3] The Court acknowledges that K2 and Klein are separate Defendants. But the settlement agreement, which was made between Klein and Ewing, contemplated that if Klein met the terms of the agreement, the case would be dismissed as to *all* defendants. Thus, K2 is in effect a third-party beneficiary and was not required to be a signatory.

*Alexander*, 63 Cal.App.3d 806 (1976).  Here, what the non-breaching party, Ewing, bargained for was two-fold: (1) for him to receive documents tying the Defendants to other telemarketing firms, presumably so that Ewing could also sue those entities; and (2) for him to receive a declaration stating that Klein had used these other telemarketing firms for improper telemarketing in this case.  He received both, albeit several days later than anticipated.  Allowing Ewing to receive "substantially what [he] bargained for" while permitting him to continue litigating against Klein and his company would be inequitable. *Id.*  Further, there is no indication that time was of the essence or that the specific time period of 30 days was "a vital matter" to the parties.  Indeed, given that there were potential reasons Klein might be unable to produce the documents—contractual or otherwise—the deadline is more reasonably read as the time at which the parties were to determine whether Klein was *able* to produce the documents, but not as a hard deadline that precluded performance after that date.

In his opposition, Ewing alleges that Klein failed to produce all the documents he had in his possession tying K2 to the other telemarketing firms.  *See* Dkt. 125 at 13.  He also alleges that Klein told him that these other telemarketing firms were "deep pocketed" defendants.  *Id.*  Whether or not this is true—and the Court notes that Ewing has made, and has been sanctioned for making, incorrect statements in this case (Dkt. 155)—the essential terms of the agreement are all this Court may consider, and those terms do not require that the telemarketing firms be deep-pocketed.  Further, while Ewing claims Klein has failed to produce all the documents he has, the terms of the agreement simply stated that Klein would produce "whatever contracts, emails or recordings exist[ed]."  Dkt. 34 at 3.  Klein has stated that he sent all the documents he had.  Dkt. 126 at 3. ("If it was not sent to Plaintiff it did not exist.").  The Court finds these documents satisfy the requirements of the agreement.

The Court is persuaded that Klein has substantially complied with the terms of the settlement agreement by producing to Ewing documents linking K2 to these other telemarketing firms and providing a declaration to that effect.  His slight delay in providing

the documents does not change that analysis.  Klein's motion to enforce the agreement is **GRANTED**.

**DISPOSITION**

For the reasons set out above, the Court finds that Klein substantially performed his portion of the settlement agreement, that the settlement agreement should be enforced, and that this case should be terminated.  This settlement agreement supersedes any previous settlement agreements.  See Dkt. 34 at 5:21-23.  Because the parties originally contemplated stipulating to provisions regarding confidentiality and non-disparagement in their dismissal, the parties may file a joint dismissal with confidentiality and non-disparagement provisions by **October 19, 2018**.  However, that agreement shall **DISMISS ALL DEFENDANTS WITH PREJUDICE** and shall not contain terms requiring this Court to find Ewing is not a vexatious litigant.  If the parties fail to jointly dismiss by that date, the Court will **DISMISS THIS CASE WITH PREJUDICE.**

Defendant's Request for Judicial Notice is **DENIED AS MOOT**.  Dkt. 115.

The parties' remaining motions, including Ewing's Motion for Partial Summary Judgment (Dkt. 132), Ewing's Motion for Default Judgment against K2 Properties (Dkt. 134), Klein's Motion for a Judgment on the Pleadings (Dkts. 135), and Ewing's Ex Parte Motion to Amend (Dkt. 141), are **DENIED AS MOOT.**

**IT IS SO ORDERED**.

Dated: October 4, 2018

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge